1

1    UNITED STATES DISTRICT COURT
     DISTRICT OF MASSACHUSETTS

2

3

4    United States of America,      )
                    Plaintiff,      )
5                                    )
                                     )
6    vs.                            )   Case No. 14cr40012-TSH-2
                                     )   Case No. 14cr40019-TSH-1
7                                    )
     Miguel Rivera,                  )
8                   Defendant.       )

9

10   BEFORE:  The Honorable Timothy S. Hillman

11

12                          Rule 11

13

14

15                          United States District Court
                            Courtroom No. 2
16                          595 Main Street
                            Worcester, Massachusetts
17                          March 16, 2015

18

19

20

21

22

                     Marianne Kusa-Ryll, RDR, CRR
23                     Official Court Reporter
                     United States District Court
24                    595 Main Street, Room 514A
                       Worcester, MA 01608-2093
25                 508-929-3399 justicehill@aol.com
                 Mechanical Steno - Transcript by Computer

1    APPEARANCES:

2    United States Attorney's Office
     Michelle L. Dineen Jerrett, Assistant United States Attorney
3    Donohue Federal Building & Courthouse
     595 Main Street, Suite 206
4    Worcester, Massachusetts 01608
     on behalf of the Government
5
     Federal Public Defender Office
6    Oscar Cruz, Jr., Assistant Federal Public Defender
     District of Massachusetts
7    51 Sleeper Street, 5th Floor
     Boston, Massachusetts  02210
8    on behalf of the Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2               (The following proceedings were held in open court

3     before the Honorable Timothy S. Hillman, United States District

4     Judge, United States District Court, District of Massachusetts,

5     at the Donohue Federal Building & United States Courthouse,

6     595 Main Street, Worcester, Massachusetts, on March 16,

7     2015.)

8               THE CLERK:  All rise.

9               Court is now open.  You may be seated.

10              Case No. 14-40012 and Case No. 14-40019, United States

11    versus Miguel Rivera.

12              Counsel, please note your appearance for the record.

13              MS. DINEEN JERRETT:  Good afternoon, your Honor.

14    Michelle Dineen Jerrett on behalf of the United States.

15              THE COURT:  Good afternoon, Ms. Dineen Jerrett.

16              MR. CRUZ:  Good afternoon.  Oscar Cruz for Miguel

17    Rivera.

18              THE COURT:  Good afternoon, Mr. Cruz.

19              All right.  And good afternoon to you, Mr. Rivera.

20              THE COURT:  And, Mr. Cruz, for the record, why are we

21    here?

22              MR. CRUZ:  Your Honor, Mr. Rivera is prepared to

23    change his plea with regard to the two indictments before the

24    Court.

25              THE COURT:  All right.  Mr. Rivera, can you come up to

1   the witness stand here; and before you sit down, raise your

2   right hand because Mr. Castles is going to swear you in, but

3   come on up here first.

4         THE CLERK:  Please raise your right hand.

5              MIGUEL RIVERA, SWORN

6         THE CLERK:  You may be seated.

7         MS. DINEEN JERRETT:  Your Honor, if I may, I

8   apologize.  There is one matter that I wanted to address with

9   the Court.  I had previously emailed with Attorney Cruz on

10   indictment 14-40012.  In the caption of Count One, it

11   inappropriately identifies 21 U.S.C., Section 841(a)(1) as

12   conspiracy to distribute heroin, which should actually be

13   21 U.S.C., Section 846.  I just wanted to make the Court aware

14   of that and move orally to amend that portion of the

15   indictment.

16         THE COURT:  Any objection?

17         MR. CRUZ:  No, your Honor.

18         THE COURT:  All right.

19         MS. DINEEN JERRETT:  Thank you, your Honor.

20         THE COURT:  All right.

21         (The Court conferred with the clerk.)

22         THE COURT:  All right.  Mr. Rivera, my name's Judge

23   Hillman.  I'm going to be asking you some questions this

24   afternoon in order to determine whether or not the guilty plea

25   that Attorney Cruz tells me you're prepared to make is being

1   made freely and voluntarily with full knowledge by you of the

2   consequences to you of pleading guilty.

3          I also want to make sure that your fee -- your plea is

4   being made upon a factual basis that contains each of the

5   essential elements of the crimes against you charged.  So in

6   order to do that, I'm going to ask you a bunch of questions.

7   If at any time during my questioning you want to stop and step

8   back and take a break, set the word -- say the word, and I'll

9   let you do that.

10          More importantly, if at any point during my

11   questioning you want to consult with Attorney Cruz, you just

12   say the word, and we'll let you do that as well.

13          Do you understand that?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Tell me your name and how old you are?

16          THE DEFENDANT:  Miguel Rivera.  I'm 30 years old.

17          THE COURT:  And do you understand that you are now

18   under oath; and if you answer any of my questions falsely, you

19   may later be subjected to a prosecution for perjury or making a

20   false statement?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  How far did you go in school, Mr. Rivera?

23          The DEFENDANT:  Eighth grade.

24          THE COURT:  And is English your first language?

25          THE DEFENDANT:  Yes, sir.

1      THE COURT:  And are you able to speak and -- speak and

2  read English?

3      THE DEFENDANT:  Yes, sir.

4      THE COURT:  Okay.  And are you presently being treated

5  or have you recently been treated for any mental illness or

6  psychiatric or psychological problem of any kind?

7      THE DEFENDANT:  No, sir.

8      THE COURT:  And have you recently been treated or are

9  you presently being treated for any drug addiction or drug

10  problem or alcohol problem of any kind?

11      THE DEFENDANT:  No, sir.

12      THE COURT:  As you sit here today, are you under the

13  influence of any medications or drugs or prescription medicine

14  or alcoholic beverage of any kind?

15      THE DEFENDANT:  No, sir.

16      THE COURT:  All right.  Now, have you received a copy

17  of the indictments, that is, the written charges against you?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  And there's two indictments.  You

20  understand that; right?

21      THE DEFENDANT:  Yes, sir.

22      THE COURT:  And in -- in the indictment in case

23  14-40012, you are charged with conspiracy to distribute heroin,

24  distribution of heroin, and aiding and abetting in those

25  crimes.  And then there's three counts.  The first one is

1    conspiracy to distribute heroin; and the second and third count

2    is distribution of heroin, and aiding and abetting in the

3    distribution of heroin.

4            And the conspiracy is alleged to be in violation of

5    21 United States Code, Section 846, and the heroin distribution

6    charges is 21 U.S.C., Section 841.

7            Are you aware that that's the charge against you in

8    indictment 12?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  And in indictment 14-40019, you are

11   charged with being a felon in possession of a firearm and

12   ammunition.  That's alleged to be in violation of 18 United

13   States Code, Section 922.

14           Do you understand that?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  All right.  And have you fully discussed

17   the charges against you and the facts and circumstances of your

18   case with Attorney Cruz?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  And, Mr. Cruz, have you communicated all

21   formal offers from the prosecution to accept a plea under terms

22   and conditions that may be favorable to the accused?

23           MR. CRUZ:  Yes, I have, your Honor, and this plea for

24   the record is pursuant to a plea agreement, which I believe has

25   been provided to the Court.

1           THE COURT:  Is that included -- is that a (c) plea?

2           MR. CRUZ:  It is, your Honor.

3           MS. DINEEN JERRETT:  Yes, your Honor.

4           THE COURT:  Thank you.

5           Okay.  And, Mr. Rivera, are you fully satisfied with

6    the -- with Attorney Cruz's representation?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  And have you and Attorney Cruz discussed

9    the -- the case rights that you have and the possible defenses

10   to these charges and the consequences to you of pleading

11   guilty?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And have you and Attorney Cruz discussed

14   the trial options of the facts of these cases, what they

15   represent?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you have any complaints about the

18   manner of Attorney Cruz's representation?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Are you pleading guilty because you are

21   guilty and for no other reason?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  All right.  Now, I am -- I've just been

24   handed this plea agreement, which you entered into with the

25   United States Attorney's office, and it bears your signature

1    and today's date.  I don't know if you can see it all the way

2    over there.

3              Did you sign that today?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  All right.  And did you have an

6    opportunity to read this agreement and discuss it with Attorney

7    Cruz before you signed it?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  And does this plea agreement contain all

10   of the terms that you agreed to?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Do you understand the terms of the

13   agreement?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Do you understand that this is the only

16   agreement that you have with the United States Government?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Has anybody made any promises or

19   assurances to you that are not contained in that agreement?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Has anybody threatened you or promised you

22   anything in order to get to you to accept this agreement?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  And do you understand that if I decide not

25   to follow the terms of the plea agreement, I will give you an

1    opportunity to withdraw your plea of guilty?

2            Do you understand that?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  So if I -- do you understand that if I

5    decide not to follow the terms of the plea agreement, and you

6    choose not to withdraw your plea, I may impose a more severe

7    sentence without being bound by the plea agreement?

8            Do you understand that?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  All right.  Now, you understand that the

11   offenses that you are pleading guilty to are felonies?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  And are you a citizen of the United

14   States?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Did you say?  All right.  And you

17   understand that if I accept your plea, you will be judged

18   guilty of those offenses; and that by being judged guilty, you

19   may lose valuable civil rights, which includes the right to

20   vote, the right to serve on a jury, the right to hold public

21   office, and the right to possess a gun or any kind of firearm.

22           Do you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Okay.  Ms. Dineen Jerrett, could you state

25   for the Court and the defendant the maximum punishment that the

1    law provides.

2           MS. DINEEN JERRETT:  Yes, your Honor.  With respect to

3    indictment 14-40012 charging the defendant with conspiracy to

4    distribute heroin in violation of 21 U.S.C., Section 846, and

5    distribution of heroin to counts under -- in violation of

6    21 United States Code, Section 841(a)(1), as to all three of

7    those counts, your Honor, the maximum term of imprisonment is

8    40 years.

9           THE COURT:  Forty, 4-0?

10          MS. DINEEN JERRETT:  Forty, yes, your Honor.  With a

11   minimum mandatory term of five years; a fine of up to

12   $5 million; supervised release of a term of four years; minimum

13   mandatory to life; and deportation if the defendant is not a

14   United States citizen.

15          With respect to indictment -- and a $300 special

16   assessment, your Honor, for each of those -- $100 for each of

17   those counts.

18          With respect to indictment 14-10019 charging the

19   defendant with possession, a felon in possession of a firearm

20   and ammunition in Count One, the maximum term of imprisonment

21   is ten years; a fine of up to $250,000; supervised release of

22   up to three years; deportation if not a U.S. citizen; as well

23   as a $100 special assessment.

24          And I will note, your Honor, that both indictments

25   carry forfeiture allegations, which would be -- need to be

1    pronounced during the oral pronouncement of sentence as well,

2    your Honor.

3            THE COURT:  What was the fine on this -- on the felon

4    in possession?

5            MS. DINEEN JERRETT:  The felon in possession, your

6    Honor, 250,000 -- up to 250,000.

7            THE COURT:  Thank you.

8            All right.  So I'm not saying that that is what's

9    going to happen, but you should understand that if I reject

10   your plea, and if you decide that you still want me to sentence

11   you, I would have the power to give you a term of imprisonment

12   of up to 130 years.  That's three times the -- three counts

13   times the 40 years, which is 120 plus 10 years on the felon in

14   possession for 130.

15           In addition, I will have the power to give you a term

16   of supervised release of up to life, a fine of $15,250,000; and

17   in addition to everything else, you're going to be required to

18   pay a special assessment on each count for a total of $400.

19           Do you understand that?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  I'm not saying that's what's going to

22   happen, but you should understand that I might have the power

23   to do that.

24           Do you understand that?

25           THE DEFENDANT:  Yes, sir.

1        THE COURT:  Do you understand that by pleading guilty

2    there are going to be forfeiture consequences, and you may be

3    required to forfeit certain property to the United States?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  Now, I know that you and Mr. Cruz have no

6    doubt talked a great deal about the sentencing guidelines, and

7    I want to talk to you a little bit about them as well.

8        So the sentencing guidelines have been issued by the

9    Sentencing Commission for judges like myself to follow when

10   deciding what the appropriate sentence should be in a criminal

11   case.  They're not mandatory, which means I don't have to

12   follow them, but I do have to consider them in arriving at your

13   sentence.

14       So have you and Attorney Cruz talked about the

15   sentencing guidelines and how they might apply in your case?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  And do you understand that I'm not going

18   to be able to determine your guideline sentence until after the

19   probation office has prepared a presentence report, which will

20   contain information about you and your criminal history and the

21   crimes that you committed?

22       And that report will also contain a recommended

23   application of the sentencing guidelines, and both you and the

24   government are going to have an opportunity to read that

25   report, and more importantly, to challenge any facts reported

1    in it and to challenge the application of the sentencing

2    guidelines recommended by the probation office.

3           So do you understanding that although I'm not required

4    to follow the sentencing guidelines, I am required to consider

5    the applicable guideline sentence before I impose sentence on

6    you?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  And do you understand that under the

9    guideline sentence, I may have authority to depart from the

10   guidelines and impose a sentence that is more severe than what

11   the guidelines call for; or conversely, I may be able to depart

12   and impose a sentence that is less severe than what the

13   guidelines call for?

14           Do you understand that?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  And do you understand that you're not

17   going to be permitted to withdraw your guilty plea

18   when -- well, that's not true.  I'm going to start over again.

19           Do you understand that if I reject your plea and

20   decide not to impose the sentence that you have agreed to and

21   you decide to move forward, you will not be permitted to

22   withdraw your guilty plea because your sentence is longer than

23   you expected or because it's different than the sentence your

24   attorney predicted?

25           Do you understand that?

1     THE DEFENDANT:  Yes, sir.

2     THE COURT:  All right.  Ms. Dineen Jerrett, just

3  briefly can you tell me about the waiver -- appeal waivers in

4  the plea agreement.

5     MS. DINEEN JERRETT:  Yes, your Honor.  Your Honor,

6  pursuant to paragraph seven in the appeal -- in the plea

7  agreement, your Honor, it indicates the defendant waives his

8  right to appeal and bring a future challenge both in a

9  collateral challenge or pursuant to a conviction or pursuant to

10  a motion under 28 United States Code, Section 2255, 2241, or

11  3582 under Title 18.

12     I think that the one benefit that the defendant

13  retains is reserving the right to claim that his lawyer

14  rendered ineffective assistance of counsel under *Strickland vs.*

15  *Washington*, but otherwise has given up his appeal rights.

16     THE COURT:  Okay.  All right.  So do you understand

17  that under the plea agreement your appeal rights have been

18  severely restrained?

19     Do you understand that?

20     THE DEFENDANT:  Yes, sir.

21     THE COURT:  All right.  Now, before I proceed to take

22  your plea, I want to talk to you about one final thing that

23  you're giving up when you plead guilty, and it's very

24  important, and that is when you plead guilty, you give up your

25  right to a trial, and more importantly, a trial by a jury.

1          So, ordinarily, you -- and as you sit in that chair

2     today, you are presumed to be innocent, and the only way that

3     the government can convict you if they go to trial is by

4     convincing a jury of 12 people that you will get to help

5     select, and that would be 12 people from the community at large

6     that you would get to help select, and the only way you could

7     be convicted if you went to trial is if the government proved

8     every element of the crimes against you beyond a reasonable

9     doubt to the satisfaction of all 12 jurors.

10          So in order for you to be convicted, all 12 jurors

11     would have to be convinced that the government had proven its

12     case against you beyond a reasonable doubt.

13          Do you understand that when you plead guilty you give

14     up that right?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And you also have the right to the

17     considerable assistance of Attorney Cruz as your lawyer, and

18     not only would Attorney Cruz be able to confront the

19     government's witnesses and cross-examine them, but he would

20     also be able to compel witnesses to testify on your behalf if

21     you thought that that would be helpful to you, and to subpoena

22     in documents or photographs and other things that may be

23     helpful to your case.

24          When you plead guilty, you give up this right to

25     confront the government's witnesses; do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And you also have what is called a

3     privilege against self-incrimination that you give up when you

4     plead guilty.  In other words, nobody can force you to admit

5     that you did what the government says you did; and if you went

6     to trial, and you chose to testify, that would be fine, but if

7     you chose not to testify because you have this privilege

8     against self-incrimination, I would instruct the jury that they

9     were not to think anything bad about either you or your case.

10    If you plead guilty, you give up that right and you have to

11    admit that you did what the government says you did.

12          Do you understand you're giving up that right?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Do you understand then by pleading guilty

15    here today, if I accept your plea, there will be no trial, and

16    you will have waived or given up your right to a trial as well

17    as the rights that come with it that I have just described.

18          Now, if I reject your plea, and you decide to go to

19    trial then, you know, we can do that.  But that's only if I

20    reject your plea.

21          Do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  All right.

24          All right.  Ms. Dineen-Jerrett, the elements of the

25    crimes against the defendant first, please.

1          MS. DINEEN JERRETT:  Yes, your Honor.  Your Honor,

2     with respect to indictment 14-40012, the elements of the

3     offenses, your Honor, as to Count One, conspiracy to distribute

4     heroin.  The government must prove beyond a reasonable doubt,

5     first, that the agreement specified in the indictment, and not

6     some other agreement or agreements, existed between at least

7     two people to violate the Controlled Substances Act; and

8     second, that the defendant willfully joined in that agreement.

9          With respect to Count Two and Three of that

10    indictment, your Honor, distribution of heroin in violation of

11    Title 21 United States Code, Section 841, the government must

12    prove beyond a reasonable doubt, first, that the defendant

13    transferred a controlled substance, in this case heroin, to

14    another person; second, that the defendant knew the substance

15    was heroin; and third, that the defendant did so knowingly and

16    intentionally, that is, it was his conscious objective to

17    transfer heroin to another person.

18         With respect to, your Honor, indictment No. 14-40019,

19    charging the defendant with one count of being a felon in

20    possession of a firearm and ammunition in violation of Title 18

21    United States Code, Section 922, the government must prove the

22    following three elements beyond a reasonable doubt:  First,

23    that the defendant was convicted of a felony offense, that is,

24    a crime that carries a prison term of more than one year;

25    second, that the defendant knowingly possessed either a

1    firearm, which is defined as something designed to or may

2    readily be converted to expel a projectile by action of an

3    explosive or a round of ammunition; and third, that the firearm

4    or ammunition was in or affecting commerce, meaning that at

5    some point prior to the time that the defendant is charged with

6    possessing the firearm or ammunition, in this case

7    November 3rd, 2012, your Honor, that the firearm or ammunition

8    crossed a state line or national boundary.

9            THE COURT:  Thank you.

10           So do you understand that those are the elements that

11   the -- of the crimes against you that the government would have

12   to prove beyond a reasonable doubt to the satisfaction of all

13   12 jurors in order for you to be convicted of those charges?

14           THE DEFENDANT:  Yes.

15           THE COURT:  All right.  And then, finally, Ms.

16   Dineen-Jerrett, the facts, please.

17           MS. DINEEN JERRETT:  Yes, your Honor.  Your Honor,

18   this investigation was conducted by the Drug Enforcement

19   Administration and High Intensity Drug Trafficking in areas

20   north of Worcester in connecting -- in cooperation with the

21   Fitchburg Police Department Drug Suppression Unit, the Bureau

22   of Alcohol, Tobacco, and Firearms, and the North Worcester

23   County Drug Task Force, which began in November of 2011 when

24   this defendant Miguel Rivera, sold three firearms on separate

25   occasions to a now former confidential source for the DEA.

1          The -- with respect to those firearms, your Honor,

2     only one firearm was charged, and that is the firearm that the

3     defendant is charged with being a felon in possession on

4     November 13th, 2012.  With respect to that, your Honor, on that

5     date, the confidential source made a number of consensually

6     recorded telephone calls to the defendant, Mr. Rivera, to

7     arrange for the purchase of a .9 millimeter pistol from the

8     defendant.

9          During one of the calls, which were mostly in Spanish,

10    the defendant told the cooperating source that the firearm he

11    was going to sell did not have a magazine, but that he knew of

12    another .9 millimeter for sale that did have a magazine.

13         In a subsequent telephone call, the defendant told the

14    cooperating witness that he could have the .9 millimeter with

15    the magazine ready in about an hour, and the two discussed a

16    price.  Ultimately, the defendant directed the confidential

17    source to the Bob's Store parking lot in Fitchburg,

18    Massachusetts.

19         THE COURT:  In which parking lot?

20         MS. DINEEN JERRETT:  The Bob's Stores, your Honor, at

21    146 Whalon Street.  Then prior to going to that location, the

22    cooperating witness was searched to make sure that there was no

23    contraband or firearms.  He was outfitted with audio and video

24    recording equipment and was under the continuous surveillance

25    both to and from the meet location.

1        Agents observed the cooperating witness waiting for

2   Mr. Rivera at that Bob's Store parking lot.  They observed a

3   blue Kia mini van with Mass. registration 154 PV3, which was a

4   rental car registered to EAN Holdings, or Enterprise rental

5   car, that the defendant was known to enter the parking lot.

6   Agents observed Mr. Rivera walk to the cooperator's car and

7   enter the passenger's side door.  The defendant and the

8   cooperator communicated mostly in Spanish.  A transaction

9   occurred where the cooperating witness handed Mr. Rivera $600

10  in cash.  You could at one point hear Mr. Rivera counting out

11  bills on the recording.

12       After the cooperator provided the money to Mr. Rivera,

13  Mr. Rivera telephoned a source for the gun, left the

14  cooperator's vehicle on foot to meet the source.  Mr. Rivera

15  returned to the car a short time later and handed the gun,

16  which was a Kel-Tec .9 millimeter pistol, Model P-11 bearing

17  serial No. ARB74 with an empty magazine to the cooperator.  Mr.

18  Rivera then left the car, and the cooperator was surveilled to

19  a debriefing location where he turned the gun over.

20       Subsequently, the ATF tested both the firearm, which

21  qualified as a firearm under federal law, and determined that

22  the firearm had been manufactured outside of the Commonwealth

23  of Massachusetts.

24       With respect to subsequent activity by the defendant,

25  beginning in approximately April of 2012, the cooperator

1    reported to the DEA that the defendant Mr. Rivera had

2    approached the cooperator about having heroin to sell.

3          Beginning in May of 2012 and continuing until October

4    of 2013, there were a total of eight controlled purchases of

5    heroin from the defendant, Mr. Rivera, and ultimately from the

6    codefendant Segundo Gutierrez.  I can tell your Honor that the

7    first transaction or the first undercover purchase of heroin on

8    May 30th, 2012, was for 9.9 grams of heroin.

9          Again, your Honor, in all of these transactions, there

10   were a series of recorded -- consensually recorded telephone

11   calls made to the defendant.  Arrangements were made for

12   purchases, locations were discussed; and during each of those

13   occasions, the cooperator was searched prior to meeting with

14   the defendant both for contraband and for firearms and were

15   surveilled both to and from the meet location.

16         On the first count or on the first controlled purchase

17   on May 30th, 2012, surveillance at 129 Milk Street in Fitchburg

18   observed the codefendant Mr. Gutierrez leave his residence and

19   proceed to the Columbus Street area in Fitchburg.  Thereafter,

20   the cooperator purchased approximately 10 grams of heroin,

21   which was subsequently analyzed.  And as I said, it turned out

22   to be 9.9 grams of heroin for $656 from Mr. Rivera at

23   Mr. Rivera's then residence at 59 Columbus Street in Fitchburg.

24         On August 30th, 2012, your Honor, there was a second

25   controlled purchase totaling 19.8 grams of heroin.  After a

1  series of recorded calls, the defendant instructed the

2  cooperator to meet him at a gas station on Central Street in

3  Leominster, Mass., which was located within walking distance of

4  an auto garage where the codefendant Segundo Gutierrez had

5  worked.

6  Once at the gas station, Mr. Rivera got into the

7  cooperator's vehicle, provided what was suspected to be heroin

8  to the cooperator in exchange for $1,400.  Thereafter, the

9  cooperator drove Mr. Rivera to Graham Street where Rivera

10  exited the vehicle and walked towards a group of men at those

11  garages where Mr. Gutierrez worked.  The substance was

12  subsequently analyzed and found to have a net weight of

13  19.8 grams of heroin.

14  On October 4th, 2012, your Honor, there was another

15  purchase totaling 39.1 grams of heroin.  After a series of

16  recorded calls, the defendant Mr. Rivera instructed the

17  cooperator that he needed some additional time.  Surveillance

18  was set up at the codefendant's residence, Mr. Gutierrez's

19  residence, where surveillance followed Mr. Gutierrez in a gray

20  Chevy pickup bearing a particular Massachusetts registration

21  that had been registered to Mr. Gutierrez.

22  Mr. Gutierrez went to -- into the apartment building,

23  emerged approximately 30 minutes later, got back into the

24  vehicle.  Surveillance followed Mr. Gutierrez to the area where

25  Rivera had previously directed the cooperator to go in

1   Fitchburg.  Mr. Gutierrez passed the meet spot, pulled over on

2   another street a short distance from the spot where Mr. Rivera

3   met him at the driver's side window.  Mr. Rivera then went

4   directly to the cooperator's vehicle, got in, provided the

5   cooperator with 40 grams of heroin in exchange for $2,800.

6   Mr. Rivera then returned to the gray Chevrolet and met

7   Mr. Gutierrez at the driver's side window.  The drugs purchased

8   subsequently were analyzed and found to have a net weight of

9   39.1 grams of heroin.

10       January 13th, your Honor, of 2013, a controlled

11  purchase of 98.4 grams of heroin.  In a series of recorded

12  telephone calls, Mr. Rivera directed the cooperator to the

13  Kmart plaza in Fitchburg for the purchase of a hundred grams of

14  heroin.  Surveillance observed this defendant, Mr. Rivera,

15  driving a black Chrysler Town and Country van, which was later

16  confirmed to be a rental vehicle leased at the time to the

17  codefendant, Mr. Gutierrez.  The cooperator entered the

18  vehicle, provided Mr. Rivera $6,500 in exchange for 100 grams

19  of heroin.

20       After the deal, Mr. Rivera went directly to the

21  garages where the codefendant worked where he pulled the black

22  Chrysler van to the rear of the garages and went inside for

23  approximately five minutes.

24       About a half an hour later, the black Chrysler van was

25  observed parked outside of Mr. Gutierrez's residence.  The

1      drugs purchased on that occasion, January 13th, 2013, were

2      analyzed by the DEA and found to have a net weight of

3      98.4 grams of heroin.

4              On May 17th, your Honor, there was another controlled

5      purchase of 19.8 grams of heroin.  In a recorded call,

6      Mr. Rivera instructed the cooperator to go to the Wyman's

7      Liquors in Leominster for the purchase of 20 grams of heroin.

8      Surveillance observed a gray Jeep Liberty being operated by

9      Mr. Rivera pull into the garages at -- where the codefendant

10     Mr. Gutierrez worked.  After the telephone call where the CS

11     had ordered the heroin.  The gray Jeep Liberty was later

12     confirmed to be a rental vehicle leased by Mr. Gutierrez.

13             Approximately five minutes after arriving at the

14     garages, the gray Jeep Liberty left and drove to where

15     Mr. Rivera had instructed the cooperator to meet.  Mr. Rivera

16     telephoned the cooperator and instructed him to follow him.

17     Eventually, the two vehicles stopped and Rivera and the

18     cooperator met where Mr. Rivera provided the cooperator with

19     20 grams of heroin in exchange for $1,400.

20             After that transaction, surveillance observed

21     Mr. Rivera return to 24 Carousel Lane, which was the residence

22     of the codefendant, Mr. Gutierrez.  The drugs purchased by the

23     cooperator were subsequently analyzed and found to have a net

24     weight of 19.8 grams of heroin.

25             On July 12th, 2013, your Honor, the cooperator made

1    recorded calls to Mr. Rivera to negotiate the purchase of

2    10 grams of heroin as a sample for an anticipated larger heroin

3    purchase in the future.

4         In the afternoon, Rivera was observed meeting with the

5    cooperator approximately one mile away from Rivera's residence.

6    Rivera was the driver and only occupant of a green Mazda MPV, a

7    vehicle mostly used by him.  During the meeting, Rivera

8    provided the cooperator with 10 grams of heroin for $700 and

9    indicated that it was his uncle's stuff.  And uncle had been

10   referred to as the codefendant, Segundo Gutierrez.

11        During that occasion, Mr. Rivera assured that if the

12   cooperator had -- if the cooperator purchased more heroin in

13   the future, it would be of the same quality.  The drugs

14   purchased were subsequently analyzed by the DEA and found to

15   have a net weight of 9.9 grams of heroin.

16        On September 5th, your Honor, the cooperator -- in the

17   days preceding September 5th, the cooperator made consensually

18   recorded calls to Rivera to raise the purchase of 125 grams of

19   heroin.  During the calls, the defendant, Mr. Rivera, assured

20   the cooperator that the heroin would be from his uncle.  The

21   deal was originally to occur on September 4th.  Mr. Rivera did

22   not answer his telephone during repeated attempts to reach him.

23        The following day on September 5th, the cooperator

24   went to the garages where the codefendant Mr. Gutierrez worked

25   and attempted to meet directly with Mr. Gutierrez, who was

1    believed to be the source of supply.

2          Ultimately, on September 5th, the cooperator meets

3    with Mr. Gutierrez, who places a telephone call to the

4    codefendant Miguel Rivera and instructs the cooperator to go

5    meet with Rivera for the purchase of the heroin.  Gutierrez

6    handed his own cellular phone to the cooperator during the

7    conversation, who had a conversation then directly with

8    Mr. Rivera.  The cooperator left the garages, met Rivera, and

9    purchased 125 grams of heroin for $7,500.

10          The cooperator and Mr. Rivera talked about the

11   codefendant, the uncle, and his garage in Leominster.

12   Mr. Rivera assured the cooperator that the cooperator could

13   come back next time and deal directly with the codefendant, the

14   uncle.  The drugs purchased by the cooperator were analyzed by

15   the DEA and found to have a net weight of 125.4 grams of

16   heroin.

17          Incidentally, your Honor, with respect to that

18   purchase, the inner packaging of the heroin was subsequently

19   analyzed for fingerprints, and there was a latent fingerprint

20   identified and actually a known fingerprint card of the

21   codefendant, Mr. Segundo Gutierrez.

22          Finally, your Honor, on October 4th of 2013, the

23   cooperator and an undercover, who had been introduced, went to

24   the front garage where the codefendant Mr. Segundo Gutierrez

25   worked to attempt to purchase heroin directly from

1   Mr. Gutierrez.

2           Upon arrival, the cooperator got out of his vehicle,

3   walked into the open bay door at the front of the garage and

4   had a conversation with Gutierrez, after which Gutierrez walked

5   outside, looked inside the undercover vehicle, and acknowledged

6   the undercover.

7           Ultimately, the cooperator left.  He returned

8   accompanied again by the cooperating -- or by the undercover.

9   Ultimately, he met with Gutierrez at the front passenger door,

10  who in the undercover's presence gave the cooperator a small

11  cardboard box, which contained heroin in exchange for $7,500.

12          The drugs purchased by the cooperator on October 4th,

13  2013, were analyzed by the DEA and found to have a net weight

14  of 124.3 grams of heroin.

15          I will also note, your Honor, that with respect to the

16  May 30th, 2012, August 30th, 2012, October 4th, 2012,

17  January 13th, 2013, and May 17th, 2013, purchases of heroin,

18  there was also a substance called Xylazine, which was noted by

19  the lab to be present.  Xylazine is a controlled substance that

20  was used for -- as a horse tranquilizer.

21          THE COURT:  Is that it?

22          MS. DINEEN JERRETT:  That's it, your Honor.  Thank

23  you.

24          THE COURT:  All right.  Mr. Rivera, did you do the

25  things that the United States Attorney said you did?

1       THE DEFENDANT:  Yes, sir.

2       THE COURT:  Do you admit that everything that she just

3   told me is true?

4       THE DEFENDANT:  Yes, sir.

5       THE COURT:  Do you want to add any facts or subtract

6   any facts or change any of the facts that I've just heard?

7       THE DEFENDANT:  No, sir.

8       THE COURT:  Are you pleading guilty because you are

9   guilty and for no other reason?

10      THE DEFENDANT:  Yes, sir.

11      THE COURT:  Mr. Cruz, is there any reason that you can

12  think of that I should not take this plea?

13      MR. CRUZ:  No, your Honor.

14      THE COURT:  All right.  Mr. Castles, you may inquire.

15      THE CLERK:  Please stand.  Miguel Rivera, on Criminal

16  No. 14-40012, on Counts One and Three of -- One through Three

17  of a three-count indictment, you have previously pled not

18  guilty.

19      Do you now wish to change your plea?

20      THE DEFENDANT:  Yes.

21      THE COURT:  What say you now as to Count One, guilty

22  or not guilty?

23      THE DEFENDANT:  Guilty.

24      THE CLERK:  As to Count Two, guilty or not guilty?

25      THE DEFENDANT:  Guilty.

 1          THE CLERK:  As to Count Three, guilty or not guilty?

 2          THE DEFENDANT:  Guilty.

 3          THE CLERK:  Under Criminal No. 14-40019, on Count

 4   One of a one-count indictment, you have previously pled guilty.

 5          Do you now wish to change your plea?

 6          THE DEFENDANT:  Yes.

 7          THE CLERK:  What say you now as to Count One, guilty

 8   or not guilty?

 9          THE DEFENDANT:  Guilty.

10          THE COURT:  You can return to the table, Mr. Rivera.

11          All right.  I find that Mr. Rivera is competent --

12          (The clerk conferred with the Court.)

13          THE COURT:  I'm going to defer, actually, acceptance

14   until we decide whether I'm going to accept the plea.

15          So we're going set the sentencing for Friday,

16   June 26th, at 2:15; and between now and that time, you're going

17   to have a presentence investigative report done, and that will

18   tell me about you and some of your history.  It's important

19   that that report be accurate.  So even minor mistakes should be

20   corrected.  Mr. Cruz will be present with you if you want when

21   you're interviewed by the probation office, and you will have

22   an opportunity to read that report and correct any errors that

23   you think are in it and to correct the application of the

24   sentencing guidelines.

25          So I'm going to see you back here Friday, June 26th,

1    at 2:15.

2              Does that work for the government?

3              MS. DINEEN JERRETT:  Yes, your Honor.

4              THE COURT:  And Mr. Cruz?

5              MR. CRUZ:  Yes, it does.  Thank you.

6              THE COURT:  All right, Mr. Rivera, good luck.  We'll

7    see you then.

8              MR. CRUZ:  Thank you.

9              MS. DINEEN JERRETT:  Thank you, your Honor.

10             THE COURT:  You're welcome.

11             MR. CRUZ:  Thank you.

12             (At 4:29 p.m., Court was adjourned.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         C E R T I F I C A T E

3

4            I, Marianne Kusa-Ryll, RDR, CRR, do hereby

5    certify that the foregoing transcript is a true and accurate

6    transcription of my stenographic notes before the Honorable

7    Timothy S. Hillman, to the best of my skill, knowledge, and

8    ability.

9

10

11       /s/ Marianne Kusa-Ryll                        3/21/18

12       Marianne Kusa-Ryll, RDR, CRR                  Date

13       Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25