1                      UNITED STATES DISTRICT COURT

2                        DISTRICT OF MASSACHUSETTS

3

4

5    United States of America,      )
                     Plaintiff,     )
6                                   )
                                    )
7    vs.                            )   Case No. 14cr40012-TSH-2
                                    )   Case No. 14cr40019-TSH-1
8                                   )
     Miguel Rivera,                 )
9                     Defendant.    )

10

11   BEFORE:  The Honorable Timothy S. Hillman

12

13                            Disposition

14

15

16                                  United States District Court
                                    Courtroom No. 2
17                                  595 Main Street
                                    Worcester, Massachusetts
18                                  June 30, 2015

19

20

21

22
                       Marianne Kusa-Ryll, RDR, CRR
23                        Official Court Reporter
                       United States District Court
24                      595 Main Street, Room 514A
                         Worcester, MA 01608-2093
25                     508-929-3399 justicehill@aol.com
                    Mechanical Steno - Transcript by Computer

1    APPEARANCES:

2    United States Attorney's Office
     Michelle L. Dineen Jerrett, Assistant United States Attorney
3    Donohue Federal Building & Courthouse
     595 Main Street, Suite 206
4    Worcester, Massachusetts 01608
     on behalf of the Government

5
     Federal Public Defender Office
6    Oscar Cruz, Jr., Assistant Federal Public Defender
     District of Massachusetts
7    51 Sleeper Street, 5th Floor
     Boston, Massachusetts  02210
8    on behalf of the Defendant

9    Also present:

10   Michelle Roberts, Probation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Timothy S. Hillman, United States District Judge, United States District Court, District of Massachusetts, at the Donohue Federal Building & United States Courthouse, 595 Main Street, Worcester, Massachusetts, on June 30, 2015.)

THE CLERK:  All rise.

Please be seated.

11:04:18AM Court is now open in the case of United States versus Miguel Rivera, Criminal Action No. 14-40012 also 14-40019.

Counsel, please identify yourself for the record.

MS. DINEEN JERRETT:  Good morning, your Honor. Michelle Dineen Jerrett on behalf of the United States.

11:04:34AM THE COURT:  Good morning, Ms. Dineen Jerrett.

MS. CRUZ:  Good morning.  Oscar Cruz on behalf of Mr. Miguel Rivera.

THE COURT:  Good morning, Mr. Cruz.

And good morning, Mr. Rivera.

11:04:45AM THE DEFENDANT:  Good morning.

THE COURT:  Okay.  To set the table, we are here for Mr. Rivera's sentencing.  In preparation for that, I have read and reviewed -- hold on one second -- Ms. Robert's, as always, excellent presentence investigative report that was originally 11:05:33AM offered on May 20 -- authored on May 22nd and then revised on

1    June 19th, and I am unaware of any other materials.

2            Ms. Dineen Jerrett, do you -- do you agree with that?

3            MS. DINEEN JERRETT:  Yes, your Honor.

4            THE COURT:  How about you, Mr. Cruz?

11:05:53AM  5            MS. CRUZ:  Yes, your Honor.  Thank you.

6            THE COURT:  All right.  Mr. Cruz, have you had a

7    chance to go through the presentence investigative report with

8    Mr. Rivera?

9            MS. CRUZ:  I have, your Honor.

11:06:02AM 10            THE COURT:  And, Mr. Rivera, do you feel like you've

11   had enough time to discuss the presentence investigative report

12   and its calculations and the history and all of the matters

13   that are contained within it?

14            THE DEFENDANT:  Yes, sir.

11:06:15AM 15            THE COURT:  Do you feel like you need more time?

16            THE DEFENDANT:  No, sir.

17            THE COURT:  Are you prepared to move forward?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  All right.  Thank you.

11:06:23AM 20            All right.  So, to continue to set the table here, I

21   have got a couple of issues that we need to flush out.  First

22   of all, let's talk about the offense level computations.

23            So, I show under count group one, which is the felon

24   in possession of a firearm, the base offense level is 24.  To

11:06:49AM 25   that offense, base offense level, I'm adding two levels because

1    the offense involved three -- between three and seven firearms.

2    I'm adding an additional two levels because some or all of the

3    firearms were stolen making the adjusted offense level 28.  For

4    count group one.

11:07:16AM 5    For count group two, I'm -- and that's the conspiracy

6    to distribute heroin, I show a base offense level of 26.  There

7    are no adjustments for a spec -- specific offense

8    characteristics, victim-related adjustments, adjustments for

9    role in the offense or for obstruction of justice.  And so the

11:07:45AM 10   greater between group -- offense level one, group offense level

11   two is 28, and to that I increase two for the increase in

12   offense level.  That shows a combined adjusted offense level of

13   30 from which there are -- there's a two-level reduction

14   because the defendant clearly demonstrated acceptance of

11:08:12AM 15   responsibility.

16   Is there a third-level reduction on the government's

17   motion?

18   MS. DINEEN JERRETT:  Yes, your Honor.

19   THE COURT:  All right.  If anybody else is not getting

11:08:19AM 20   a headache, something's wrong here.  So that gets us to 27.

21   All right.  And there are some Chapter 4 enhancements.

22   There is -- he is a career offender as that is determined

23   because of the predicates.  I will note for the record that at

24   least one of the predicates is in question by the recent

11:08:55AM 25   decision of the United States Supreme Court in *Johnson versus*

1    *the United States*, namely, the resisting arrest, I think.

2         So anyway, under the Chapter 4 enhancements, he's a

3    31.  That's 34 minus the adjustment for acceptance and the

4    government's motion.

11:09:16AM  5         More importantly, his Criminal History Score is IX,

6    and that would put him in a Criminal History IV, but because he

7    is a career offender his Criminal History is VI.

8         Ms. Dineen Jerrett, do you agree with those

9    calculations?

11:09:45AM 10         MS. DINEEN JERRETT:  I do, your Honor.  I -- I was

11    going to raise to the Court as well the recent decision in

12    *United States versus Johnson*.  The government's position is

13    that at least at this point, given that that was an ACCA case,

14    and not a career offender determination, that the government

11:10:07AM 15    believes that the resisting arrest offense would still qualify.

16         Having said that, your Honor, as is clear from the PSR

17    and the (c) plea that the defendant entered into with the

18    government, the defendant is getting a well below guideline

19    sentence even if, your Honor, the government's position on the

11:10:31AM 20    resisting arrest is incorrect, and it would no longer qualify

21    as a predicate offense for career offender designation then the

22    defendant would still be a category -- total offense level of

23    27; and as the Court pointed out, a Criminal History Category

24    of IX, which is category IV, which would yield an advisory

11:10:55AM 25    guideline range of 100 to 125 months, which I will note is also

1          above what the (c) plea contemplates in this case.

2                    I spoke very briefly with Mr. Cruz prior to the Court

3          coming into session to ask if he was making any objection to

4          the career offender designation.  At this point, I believe he

11:11:17AM  5   is not intending to.  I just want to make sure that the Court

6          is clear that there -- that there may not be a claim down the

7          road that there was an ineffective assistance of counsel for

8          not raising that issue.  I think I would like the record to

9          establish that even without that designation the contemplated

11:11:34AM 10   sentence here is below even what would otherwise be the

11         noncareer offender advisory guideline range.

12                   THE COURT:  Thank you.

13                   Mr. Cruz.

14                   MS. CRUZ:  Your Honor, I don't disagree with what

11:11:46AM 15   Ms. Dineen Jerrett has stated to the Court.  What I will note

16         is that when we had originally put together the plea agreement

17         that's before the Court, the guideline calculation that would

18         have applied under that set of numbers has 84 months as a low

19         end, and that's where that number came from.  So I just wanted

11:12:06AM 20   the Court to -- the Court to understand where the numbers came

21         regarding the (c) plea.  And I do not at this point raise an

22         objection with regard to the calculations that are in the

23         presentence report as far as the guidelines are concerned,

24         other than to note what the Court already has, which is that

11:12:27AM 25   this recent Supreme Court decision in *Johnson versus United*

1     *States* may call into question whether the resisting arrest

2     prior offense here can be used as a predicate.

3           THE COURT:  I think *Johnson* applies to career

4     offenders.  I'll just say it right now, so...

11:12:41AM 5           MS. CRUZ:  Uh-huh.

6           THE COURT:  All right.  Mr. Rivera, are you following

7     all that?  Because if you are, you're the only one, I can tell

8     you right now.  This is really complicated stuff, but do you

9     understand that the United States Supreme Court has caused us

11:13:01AM 10     to reassess some of the guideline calculations in this case?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  And that despite what the United States

13     Supreme Court has done, both the United States and your

14     attorney are recom -- and you are recommending to me that I

11:13:22AM 15     impose a sentence on you that is way below what the guidelines

16     would be if -- if you -- I find that you are a career offender,

17     which I -- which is what is the present status; or conversely,

18     if I give you the reduced classification because of the -- the

19     new case, which still makes your guideline sentence 100 to

11:13:49AM 20     127 months.

21           Do you understand that?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Are you prepared to go forward today?

24           THE DEFENDANT:  Yes, sir.

11:13:54AM 25           THE COURT:  All right.  All right.  So just to set

1    the -- continue to set the table then.  Whether I find that he

2    is a career -- if I find that he was a career offender, and I'm

3    not sure now under *Johnson* that he is, but if I did, his

4    guideline range would be 188 to 235 months.  If I found that he

11:14:37AM  5    was not a career offender, his guideline range would be 100 to

6    125 months; four to five years of supervised release;

7    ineligibility for probation -- is the fine range the same on

8    that, Ms. Roberts?

9          MS. ROBERTS:  I think it is not, Judge.  If I can have

11:14:58AM 10    one minute?

11          THE COURT:  Yeah, please.  And under the -- under the

12    career offender guidelines, his fine range would be 15,000 to

13    15 million; restitution is not applicable; and a special

14    assessment of $400.

11:15:14AM 15          MS. ROBERTS:  12,500 minimum is the same.

16          THE COURT:  12,500 to 15 million is the fine range

17    under the -- the lower Criminal History Category.

18          All right.  Ms. Dineen-Jerrett, do you agree with

19    those calculations?

11:15:32AM 20          MS. DINEEN JERRETT:  Yes, your Honor.

21          THE COURT:  How about you, Mr. Cruz?

22          MS. CRUZ:  Yes, I do, your Honor.

23          THE COURT:  All right.  Ms. Dineen Jerrett, let me

24    hear you first.

11:15:38AM 25          MS. DINEEN JERRETT:  Thank you, your Honor.

1          THE COURT:  And by the way, I've got to tell both of

2     you, I'm digging my heels in a little bit.  This guy has a past

3     that is troublesome.

4          MS. DINEEN JERRETT:  I agree, your Honor, and I will

11:15:49AM 5     start by indicating to the Court that, frankly, the government

6     miscalculated at the outset the guidelines in this case;

7     nevertheless, we entered into a binding plea agreement, and we

8     stand before the Court willing to abide by the terms of that

9     plea agreement to, frankly, the defendant's benefit, in the

11:16:15AM 10     government's opinion.

11          The defendant does have a -- a troubling history, not

12     only with violence, but also with drugs, your Honor.  While

13     it -- while it certainly is not part of the conduct charged in

14     this case, the defendant has been held in state custody on an

11:16:34AM 15     extremely violent armed home invasion.

16          THE COURT:  What's the deal -- what's going on with

17     that, your understanding what's going to happen with that one?

18          MS. DINEEN JERRETT:  Your Honor, I -- I mean, clearly

19     only the defendant knows.  I -- my strong suspicion is once the

11:16:48AM 20     case is resolved here that the defendant may attempt to resolve

21     it down there.  I think it would have -- to do it in the

22     reverse order would have added criminal history points for him

23     here.  I don't know what the state is going to do, if they --

24          THE COURT:  I think -- I've got to think about this,

11:17:04AM 25     and I have to think about it every time I'm confronted with it,

1    but I think they can run their time concurrent with ours, but

2    we can't run ours concurrent with theirs; am I saying that

3    right?

4           MS. DINEEN JERRETT:  I think that's right, your Honor,

11:17:18AM 5    and right now I don't think he -- he was held on the armed home

6    invasion in state court, so I do not believe that any of -- any

7    of the time that he has been held to date is on federal -- is

8    any federal time perhaps.

9           THE COURT:  Oh, he's not on federal paper?

11:17:33AM 10           MS. DINEEN JERRETT:  He is -- he is on state -- he has

11   been held on the state, and that's -- that's my understanding,

12   your Honor.

13           THE COURT:  Okay.

14           MS. DINEEN JERRETT:  And as I indicated, I messed up;

11:17:43AM 15   plain and simple, I messed up, and I -- when I found out from

16   Ms. Roberts that there was an error on my part, I spoke with my

17   office; and as I said, we -- we are -- we're going to honor the

18   terms of the agreement.  We entered into it, and that is

19   something we're going to stand by.  We are not attempting to

11:18:10AM 20   withdraw it.  We're not asking the Court to reject it, but it

21   is something that I take full responsibility for on behalf of

22   the government for that error on my part.

23           Having said that, your Honor, his -- as I started to

24   say before, his -- the defendant's criminal history is

11:18:28AM 25   troubling.  The facts of the armed home invasion that is being

1    dealt with down the street are -- are very disturbing.  It's my

2    understanding that there were young children in the house and

3    that there were shots fired.  This is an individual who not

4    only had that issue that is pending, but in the context of this

11:18:50AM 5    case, obviously, one of the indictments deals with the sale of

6    a gun, but there were actually three sales to the same

7    cooperating witness, only one of which was charged in this

8    case, your Honor.  This is an individual, who has access to

9    guns, who has sold them to a cooperator, who has used them in

11:19:09AM 10   his -- his past.  Eighty-four months is a lengthy sentence, but

11   frankly, it's -- I -- I'm with the Court in its question as to

12   whether that's sufficient in this case.  Having said that, that

13   is what the government is supporting and recommending.

14          I will also note, your Honor, that the (c) plea

11:19:30AM 15   contemplates a supervised release term of 48 months after his

16   incarceration, a mandatory special assessment of $400, and that

17   there are forfeiture provisions as part of the indictment as

18   well as part of the plea agreement, so the government would

19   request that the Court enter the forfeiture order both orally

11:19:50AM 20   today and as part of the judgment.

21          THE COURT:  Thank you.

22          MS. DINEEN JERRETT:  Thank you, your Honor.

23          MS. CRUZ:  Your Honor, what I will say to the Court is

24   that when we discussed the plea agreement, I think both

11:20:02AM 25   Ms. Dineen Jerrett and I were in agreement that the 84-month

1    sentence would be appropriate for Mr. Rivera, not only because

2    there was no -- the record itself, I would suggest to the

3    Court, indicates that he has never served a sentence of the

4    length that's being requested at this particular time, seven

11:20:25AM 5    years.

6         My understanding is that his greatest or -- or the

7    lengthiest sentence he has served in the past is a three-year

8    sentence in a drug case, and this was out of the state court in

9    Lawrence that both Ms. Dineen Jerrett and I agreed would

11:20:45AM 10   potentially be a predicate for career offender.  I think where

11   we perhaps missed in terms of the calculation was in assuming

12   that the resisting arrest that's attached to what looks to be a

13   motor vehicle offense in paragraph 69 of the PSR, that that

14   wouldn't necessarily count in terms of being a career offender

11:21:10AM 15   predicate.

16        But as the Court will note, that was a case for which

17   he received a sentence of probation.  There was a six-month

18   committed sentence that was imposed as part of a probation

19   violation, but it did -- does not appear to be a case of any

11:21:26AM 20   serious consequence, and it does not appear to be a conviction

21   that should trigger a 15-year, low-end sentence as a career

22   offender.  So, even if the Court were to disregard or at least

23   not apply the career offender designation --

24        THE COURT:  A min. mand. 15 on that -- is that where

11:21:47AM 25   that goes to?

1                MS. CRUZ:  Oh, no, no, it would just be the career

2       offender --

3                THE COURT:  Okay.

4                MR. CRUZ:  -- advisory range, that it wouldn't

11:21:51AM  5   necessarily fit a person with Mr. Rivera's criminal history

6       that a seven-year sentence would be more reasonable under the

7       circumstances.

8                In addition to that, your Honor, I think that the

9       government and I in reaching this plea agreement in coming to

11:22:06AM 10   terms that the government is correct in -- in standing by the

11      agreement that has been presented.  It is an agreement under

12      which Mr. Rivera agreed to plead guilty in this particular case

13      to both of these indictments.  It's a related case, although

14      it's two separate indictments in the sense that it was an

11:22:28AM 15   investigation that involved both a drug investigation and

16      firearms.  There were related or -- or the same confidential

17      informant, I believe, was used in both instances, and it was

18      charged separately, but it's not all as bad as the Court has

19      seen in his record.

11:22:48AM 20             Mr. Rivera, as I said, is prepared to accept

21      responsibility for these offenses and accept a very lengthy

22      sentence of seven years.  He is someone who still relatively

23      young at 31 years old does not want to live the balance of his

24      life in prison.  As evidence of that, his family is in the

11:23:09AM 25   court today in attendance, including his young daughter.  These

1   are supports in the community that I would suggest to the Court

2   are an indication that he can change in terms of his behavior;

3   that he has things and motivations for which he can abide by

4   the law; and he is certainly remorseful for the conduct that he

11:23:34AM 5   has accepted responsibility for in this case.

6           So, I ask that the Court not reject the (c) plea

7   agreement to 84 months in this case because of the fact that I

8   think it fits in this particular case given his criminal

9   history; that he is at a point in his life where he still can

11:23:51AM 10   do positive things and that hopefully his family and his love

11   for his family will keep him on the straight and narrow, if you

12   will.  So, I would ask the Court to accept it.

13           THE COURT:  Tell me -- tell me a little bit more about

14   him and also what -- what's your understanding of what's going

11:24:05AM 15   to go down down the street?

16           MS. CRUZ:  Oh, in terms of that situation, your Honor,

17   my understanding is that that case is set up for a motion

18   hearing.  I believe that the motion has to do with certain

19   evidence in the particular case, but I also understand that it

11:24:27AM 20   was all related to some get together or party at which

21   Mr. Rivera was a guest at some point.  There was some

22   disagreement or -- amongst people that were there at the party

23   that the claim that he was involved in, but the bottom line is,

24   your Honor, is that there is a question, as far as I can tell

11:24:48AM 25   from looking at the case, about whether or not he, in fact, was

1    involved with any firearm or anything of that nature in terms

2    of that incident.

3         The state attorney is -- has filed various motions,

4    and that's where it is at this point.  My understanding is that

11:25:04AM 5    although he has been in primary state custody that the Bureau

6    of Prisons can credit him for time that hasn't been attributed

7    to any other sentence.  So it is a situation where he

8    might -- he might get credit for that time as long as this case

9    is effectively resolved before that case ends up being

11:25:25AM 10   resolved.  Then the game plan would be for him to resolve the

11   state case, and I think the Court is right in suggesting the

12   state can impose concurrent time, if that is the way things go,

13   as far as if there's a conviction that comes of that case.

14        The other thing, your Honor, is I want to pass up a

11:25:42AM 15   statement that Mr. Rivera has written for the Court, and that

16   will give the Court a little more insight into Mr. Rivera as a

17   person, who from the Court's reading of the PSR knows was

18   primarily raised in the Lawrence area.  He did not have both

19   parents there for him, who struggled at an early age with

11:26:10AM 20   substance abuse as well as some physical and emotional

21   problems; and the other unfortunate situation is that the case

22   that is pending before the Court, this particular case, there's

23   a codefendant, who apparently is a relative of some form of

24   Mr. Rivera's.

11:26:31AM 25        THE COURT:  Segundo.

1              MS. CRUZ:  An older -- an older relative who may very

2     well have had some hand in getting him involved in what appears

3     to be a more serious level of offense conduct that -- than he

4     had been involved with previously, and the Court --

11:26:46AM 5          THE COURT:  He doesn't have a good background.

6              MS. CRUZ:  Yes, your Honor.  Yes, your Honor.  And but

7     there is still, as I said, and I think the Court from reading

8     his statement will see that there is still some positive with

9     this young man.

11:26:58AM 10         THE COURT:  What's going on with the other guy?

11             MS. DINEEN JERRETT:  Your Honor, he -- Mr. Gutierrez,

12    the codefendant, had been involved in a case in Florida that

13    was resolved via a plea, and he was sentenced on that case.  He

14    is now here in this Court's jurisdiction.  He's at Wyatt, I

11:27:18AM 15  believe, your Honor, has been in magistrate court here.  I

16    anticipate that that will be moving along to this court soon.

17             I will note, your Honor, just very briefly before you

18    read.  I have not seen that statement.  I'm not suggesting that

19    I need to, but the government has not seen that statement.

11:27:35AM 20         The only other thing that I do want to note with

21    respect to the armed home invasion that's charged down the

22    street, and I'm not looking to litigate that case here, Judge,

23    but it's my recollection from the police report that the

24    defendant was subdued by members of the household or visitors

11:27:54AM 25  to that household, and physically sat upon until the police

arrived.  So, to the extent that there's a suggestion that he

may not have been the perpetrator, I wanted to at least alert

the Court to that fact.

THE COURT:  Thank you.

Lis, could you get that to me.

Mr. Cruz, does Mr. Rivera wish to address me before I

impose sentence?

MS. CRUZ:  Your Honor, the statement that he wanted to

write it out for your Honor.

THE COURT:  Thank you.

(The Court conferred with Probation.)

THE COURT:  All right.  Mr. Rivera, if you could stand

up for me, please.

So, Mr. Rivera, I'm -- I am -- I've got to tell you, I

am resisting this because you've -- there's just not a lot to

recommend you to this sentence, and it's a lot -- seven years

is a lot of time, but your -- your criminal history is just

abysmal.  It's just awful.  And, frankly, this is your -- this

is it.  I mean, you -- so I'm going to do this, okay.  I'm

fighting it, but I'm gonna do it.  Seven years is a long time,

but here's the thing about this.  You've got to figure it out.

This is not the way to go through life.  You know, you've got

to -- you've got some wonderful people who are supporting you

here that have -- you know, that have continued to be with you

even, you know, in the darkest of times, which today is for

1    you.  So think about that when you get out and, you know,

2    you -- you know, don't go back to the same people.  Don't go

3    back to the same thing because you're going to keep getting

4    what you got.  Okay?

11:31:14AM 5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  I mean this is it, you're going to do life

7    on the installment plan if you keep doing this.  And the next

8    time -- you know the next time's going to be a long fall,

9    right, you get that?

11:31:23AM 10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  All right.  Okay.  So pursuant to the

12   Sentencing Reform Act of 1984, and having considered the

13   sentencing factors enumerated at 18 United States Code,

14   Section 3553(a), it is the judgment of the Court that you

11:31:37AM 15   should be committed to the custody of the Bureau of Prisons to

16   be imprisoned for a term of 84 months.  The term of 84 months

17   is on Counts One through Three and on Count One -- Counts One

18   through Three on indictment 14-40012, and 84 months on Count

19   One of indictment 14-40019, and they are to be served

11:32:01AM 20   concurrently.

21            Upon release from imprisonment, you shall be placed on

22   supervised release for a term of four years, and that -- that

23   likewise will be concurrent on all counts.

24            On seventy -- upon -- within 72 hours of release from

11:32:17AM 25   custody, you shall report in person to the district where you

1    are released.  I impose no fine, as I find you have no

2    financial ability to pay a fine.

3         I am imposing the proposed mandatory and special

4    conditions of probation recommended by Ms. Roberts, and I am

11:32:36AM 5    further ordering that you shall pay to the United States a

6    special assessment of $400, which shall be due and payable

7    immediately.

8         I am also entering a preliminary order of forfeiture.

9         Is there -- do you propose to send a follow-up on

11:32:53AM 10   that?

11         MS. DINEEN JERRETT:  Yes, your Honor.

12         THE COURT:  All right.  And so I will await the

13    government's motion to formally adopt the rest of that.

14         Assuming your appellate rights have survived your

11:33:08AM 15   appeal waivers, you have a right to appeal your sentence

16    particularly if you think it was contrary to law.  If you are

17    unable to pay the costs of appeal, you may ask permission to

18    have those costs waived and appeal without paying.

19         You must file any notice of appeal within 14 days

11:33:26AM 20   after the entry of judgment.  If you request, the clerk will

21    immediately prepare and file a notice of appeal on your behalf.

22         All right.  Ms. Dineen Jerrett, anything further?

23         MS. DINEEN JERRETT:  No, your Honor.

24         THE COURT:  Mr. Cruz?

11:33:37AM 25   MS. CRUZ:  No, thank you.

1          THE COURT:  Nice job, both of you.

2          MS. DINEEN JERRETT:  Thank you, your Honor.

3          MR. CRUZ:  Thank you, your Honor.

4          THE COURT:  Good luck.  Make this work.

11:33:41AM  5          (At 11:33 a.m., Court was adjourned.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3              I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript is a true and accurate

5    transcription of my stenographic notes before the Honorable

6    Timothy S. Hillman, to the best of my skill, knowledge, and

7    ability.

8

9

10        /s/ Marianne Kusa-Ryll                    3/21/18

11        Marianne Kusa-Ryll, RDR, CRR              Date

12        Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25